**HILKER & BLETSCH CO. v. UNITED STATES.**

No. 52 C 977.

United States District Court
N. D. Illinois, E. D.

July 1, 1953.

John S. Hall, James McKeag, Chicago, Ill., for plaintiff.

Otto Kerner, U. S. Atty. N. Dist. of Ill., Chicago, Ill., Benjamin Pester, Sp. Asst. Atty. Gen., Washington, D. C., John A. Looby, Jr., Asst. U. S. Atty. N. Dist. of Ill., Chicago, for defendant.

BARNES, Chief Judge.

On June 15, 1953, the above entitled cause came regularly on for trial to the Court without a jury and after hearing the evidence and arguments of counsel the Court found for the defendant. Whereupon the Court makes the following findings of fact and conclusions of law:

### Findings of Fact

1. The claimant, Hilker and Bletsch Company, is an Illinois corporation, engaged in the manufacture and sale of food products, having its principal place of business at 614 West Hubbard Street, Chicago, Illinois, and within the jurisdiction of this court.

2. This is a suit for drawback of distilled spirits taxes paid as provided by Section 3250($l$)(5) of the Internal Revenue Code, 26 U.S.C.A. § 3250($l$)(5), as amended by Section 309(b) of the Revenue Act of 1943, 26 U.S.C.A. § 3250 note, in the sum of $2,483.05, by reason of the use of the distilled spirits in the manufacture of food products.

3. From October 1, 1949 to December 31, 1949, the claimant used 413.842 proof gallons of distilled spirits in the manufacture of flavors and flavoring extracts as foods and not for beverage purposes. The distilled spirits were tax paid and had been produced in a domestic registered distillery or industrial alcohol plant.

4. The claimant, on February 27, 1950, prepared a claim for drawback of $2,489.05 on Treasury Form 873 for the use of 413.842 proof gallons of distilled spirits during the quarterly period from October 1, 1949 to December 31, 1949. The claim was signed by C. E. Bletsch, President, whose signature was acknowledged on February 27, 1950.

5. Due to the absence from work of the claimant's stenographer the computation, which would take about two hours to make, was not completed until March 30, 1950, on which date C. E. Bletsch, the President of claimant, was out of town. Upon his return on March

31, 1950, he signed the computations, which are a part of the claim, Treasury Form 873.

6. Harold L. Kettell, claimant's auditor, after completion of the claim on March 31, 1950, was driven to the office of the Alcohol Tax Unit in Chicago, Illinois, and upon his arrival at about 4:35 P.M. found that office closed. Being unable to file the claim with the District Supervisor of the Alcohol Tax Unit, he returned to the office of the claimant, placed the claim in an envelope with proper postage and gave it to one of the claimant's employees to be placed in the United States Mails with other outgoing mail after 5:00 P.M., which was the claimant's closing time.

7. The claim was placed in a mail box sometime between 5:15 and 5:30 P.M. on Friday, March 31, 1950 and received in the office of the District Supervisor on Monday, April 3, 1950. The envelope bears a Chicago, Illinois, 7:30 P.M. postmark. The claim was rejected on the ground that it had not been filed within the three months next succeeding the quarter for which the drawback was claimed.

8. The usual business hours of the Alcohol Tax Unit on March 31, 1953, which had been established and which were being observed and were observed for a period of six years prior to the time of this attempted filing, were from 8:00 A.M. to 4:30 P.M.

### Conclusions of Law

1. The Court has jurisdiction over the subject matter and over the parties to the suit.

2. Governmental employees are required to work forty hours a week. They take a thirty-minute lunch hour, and work eight hours on each of five days a week. The office of the Alcohol Tax Unit was not required to keep open until twelve o'clock midnight on March 31, 1950. They rightfully closed at sometime, and this Court or any other Court cannot say that it would be wiser to open at eight-thirty and close at five.

The business hours of the Alcohol Tax Unit were reasonable.

3. No act was committed by the Alcohol Tax Unit or the Executive Branch of the Government which prevented the claimant from filing the claim for drawback in the office of the district supervisor within the time required by statute.

4. In this case the claimant was negligent. It sought out the Post Office as a means of depositing its claim. Therefore, the Post Office was its agent, and delivery to the Post Office was not delivery to the District Supervisor of the Alcohol Tax Unit.

5. The word "file" used in the statute means presenting the claim in the proper office for filing, and in this case that office was the District Supervisor, Alcohol Tax Unit. The claim was not filed until April 3, 1950, which was not within the three month period next succeeding the quarter for which the drawback is claimed.

6. Judgment will be entered for the defendant.